UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In the matter of:

   Monica L. Williams,                          Case No. 10-70559-MBM
                                                          Chapter No. 13
                                        Debtor. /          Hon. Marci B. McIvor

**OPINION REGARDING DEBTOR'S MOTION FOR ENTRY OF FINAL
ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL**

On November 15, 2011, Debtor filed a "Motion for Entry of Final Order Authorizing Debtor to Use Cash Collateral, Granting Replacement Liens and Other Relief." For the following reasons, Debtor's Motion is adjourned pending an evidentiary hearing on the value of the proposed replacement lien.

### I. Background

On October 1, 2010, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. At the time Debtor's case was filed, Debtor owned a 2006 Honda Accord. Debtor valued the Honda Accord at $10,500.00 on Schedule B of her bankruptcy schedules. Debtor's Chapter 13 Plan of Reorganization proposed to pay the market value of $10,500.00 in 60 monthly installments of $195.91 at an interest rate of 3.75%. On December 3, 2010, University of Michigan Credit Union ("Credit Union") filed a claim in Debtor's bankruptcy proceeding in the amount of $9,370.78.[1] At the time Debtor's case was filed, the Credit Union held a validly perfected security interest in the vehicle to secure repayment of a loan balance of approximately $9,370.78.

---

[1] University of Michigan Credit Union filed an amended claim on December 9, 2010. The amended claim did not alter the amount of the claim.

On January 5, 2011, the Court entered an order confirming Debtor's Plan of Reorganization. The Plan provides:

> **VESTING, POSSESSION OF ESTATE PROPERTY AND LIEN RETENTION:** Upon confirmation of the Plan, all property of the estate shall vest in the debtor [11 U.S.C. § 1327(b)]. The debtor shall remain in possession of all property of the estate during the pendency of this case unless specifically provided herein [11 U.S.C. § 1306(b)]. All secured creditors shall retain the liens securing their claims unless otherwise stated.

(Chapter 13 Plan, II(B)).

On or about October 24, 2011, the 2006 Honda was destroyed in an accident. The vehicle was fully insured and the insurer paid approximately $8,492.00 to the Credit Union as the loss payee on the insurance policy.

On November 15, 2011, Debtor filed a "Motion for Entry of Final Order Authorizing Debtor to Use Cash Collateral, Granting Replacement Lien, and Other Relief." In its motion, Debtor requests a turnover of the insurance proceeds, currently being held by the Credit Union, so that Debtor may purchase a replacement vehicle. Debtor's motion proposes to grant the Credit Union a replacement lien on the newly purchased vehicle, and continue to make the plan payments to the Credit Union in the amount proposed in the original confirmed Plan. Debtor also requested an expedited hearing on her motion.

On November 22, 2011, the Court held a hearing on Debtor's Motion. The Credit Union appeared at the hearing and objected to Debtor's Motion. The Court requested briefs from the parties and adjourned the hearing on Debtor's Motion to December 6, 2011. The parties filed briefs on November 29, 2011.

## II. Analysis

A. <u>Insurance proceeds paid to replace a vehicle owned by the Debtor on the date of confirmation are property of the estate</u>.

Debtor argues that the insurance proceeds are property of the bankruptcy estate pursuant to 11 U.S.C. § 1306. Debtor then argues that as property of the estate, 11 U.S.C. § 363 permits the Debtor to use the proceeds to purchase a replacement vehicle. Debtor relies on *In re Guthrie,* 2009 WL 2208334 (Bankr. D. Kan. 2009) to support her position.

The Credit Union argues that the insurance proceeds are not property of the bankruptcy estate. The Credit Union asserts that since the insurance proceeds are not property of the bankruptcy estate, Debtor cannot avail herself of 11 U.S.C. § 363 to compel the Credit Union to turn the insurance proceeds over to Debtor for the purpose of purchasing a new vehicle. Creditor relies on *In re Van Stelle,* 354 B.R 157 (W.D. Mich. 2006).

Four sections of the Bankruptcy Code are relevant to the issue in the present matter; 11 U.S.C. §§ 1306, 1327, 363 and 541(a)(6). Those sections provide, in relevant part::

**11 U.S.C. § 1306 (Property of the estate)**

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title-
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first....

3

**11 U.S.C. § 1327 (Effect of Confirmation)**

. . .

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

**11 U.S.C. § 363 (Use, sale or lease of property)**

. . .

(b)(1) The trustee[2], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, ...

(c)(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless-

(A) each entity that has an interest in such cash collateral consents; or
(B) the court, after notice and a hearing authorizes such use, sale, or lease in accordance with the provisions of this section. ....

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

**11 U.S.C. § 541(a)(6) (Property of the estate)**

. . .

Proceeds, product, offspring, rents or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after commencement of the case.

---

[2]11 U.S.C. § 1303 permits the debtor (subject to certain limitations not relevant to this matter) to exercise the rights and powers of a trustee under 11 U.S.C. §§ 363(b), (d), (e), (f) and (l).

The first question which must be answered by this Court is whether the insurance proceeds are property of the bankruptcy estate under 11 U.S.C. § 1306, or property of the debtor pursuant to 11 U.S.C. § 1327(b). A careful reading of the statutes along with the large body of relevant case law discloses that the interaction between the Bankruptcy Code provision addressing what constitutes property of a chapter 13 estate (§ 1306) and the provision addressing the effect of confirmation (§ 1327) is anything but straightforward. *See generally* Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, ¶ 230.1 (4th ed.)(11 U.S.C. § 1327(b): Vesting Effect on Property of Estate). On its face, section 1306(a) suggests that an asset acquired after the commencement of a case, but before the case is closed, dismissed or converted, is property of the estate. That provision appears to conflict with § 1327(b), which provides that "[e]xcept as otherwise provided in the plan or order confirming the plan, the confirmation of the plan vests all of the property of the estate in the debtor." If "vesting" means that actual ownership of all property of the estate is transferred to a debtor at confirmation, then no property remains in the estate at confirmation. As explained by the court in *Annese v. Kolenda (In re Kolenda)*. 212 B.R. 851 (W.D. Mich. 1997), these sections of the Bankruptcy Code are "'not 'models of clarity'", and courts have taken at least three different approaches to reconciling the language. *Kolenda*, 212 B.R. at 853 (citation omitted).

In *Kolenda*, the chapter 13 debtors entered into a post-confirmation financing agreement to purchase a new vehicle. The debtors subsequently defaulted and the creditor repossessed the car. The debtors argued that the vehicle was property of the estate and that the creditor's repossession of the car violated the automatic stay. The

5

creditor relied on 11 U.S.C. § 1327(b), arguing that ownership of the vehicle was vested in the debtor. The bankruptcy court agreed with the debtors and the decision was affirmed by the district court.

In attempting to reconcile the language of § 1306 with the language of § 1327(b), the district court recognized that there were at least three different approaches taken by other courts.

> Under the first approach, the 'estate termination' approach, courts have concluded that after confirmation, ownership of all property in the estate vests with the debtor and the estate ceases to exist. *See, e.g., In re Toth*, 193 B.R. 992, 996 (Bankr.N.D.Ga.1996); *In re Petruccelli*, 113 B.R. 5 (Bankr.S.D.Cal.1990); *In re Walker*, 84 B.R. 888 (Bankr.D.D.C.1988). This interpretation favors post-petition creditors because debtors may dispose of and encumber their property as they see fit and post-petition creditors may go after that property without running afoul of the stay.
>
> The second interpretation, the 'estate transformation' approach, takes a middle ground. Courts adopting this approach have concluded that, after confirmation, only plan-essential property remains in the estate, including that part of post-confirmation earnings necessary to fund the plan. *See e.g., In re Ziegler*, 136 B.R. 497, 500 (Bankr.N.D.Ill.1992); *In re Root,* 61 B.R. 984 (Bankr.D.Colo.1986). On this approach, the courts conclude that the property in the estate at the time of confirmation vests with the debtor without terminating the estate. Instead, post-confirmation earnings and acquisitions become estate property to the extent necessary to fund the plan.
>
> Under the third interpretation, the 'estate preservation' approach, vesting under section 1327(b) is understood to remove no property from the estate. *See In re Clark*, 69 B.R. 885, amended on reconsideration in part, 71 B.R. 747 (Bankr.E.D.Penn.1987); *Fisher I*, 198 B.R. 721. Under this view, the ownership interest that is vested at confirmation is limited to the degree the property is required for successful completion of the plan. *See In re Aneiro*, 72 B.R. 424, 429–30 (Bankr.S.D.Cal.1987); *In re Price*, 130 B.R. 259, 269 (N.D.Ill.1991). 'Plainly there is no firm line which divides the property of the debtor and property of the estate once a Chapter 13 plan has been confirmed. Rather, the two must be treated as one and the same, at least to the extent that the debtor's post-confirmation income or other property is committed to implementation of the plan.' *Price*, 130 B.R. at 269.

*Kolenda*, 212 B.R. at 853.[3]

The *Kolenda* court adopted the estate preservation approach, finding that it "makes the most sense of the code provisions as a whole." As explained by the court, "[b]y the clear terms of § 1306(a), confirmation is not relevant to determining what property is part of the estate. The only relevant events are 'dismissal, closing or conversion of the case.' [Citation omitted]. If Congress had intended for confirmation to so dramatically affect the expansive definition of property of the estate found in § 1306, it knew how to draft such a provision." *Kolenda*, 212 B.R. at 853. The court determined that the term "vesting" is "not necessarily synonymous with transformation of the estate property into property of the debtor." *Kolenda* at 854. Rather, "[v]esting . . . has the ordinary meaning of conveying some immediate right in property.. . One could understand the term to return to the debtor something more than possession – i.e., full ownership rights in the property **except** vis-a-vis the interests of the estate in fulfilling the plan". *Id*. (emphasis added). The court further explained that "[s]ince 'vesting' may mean a fixing of rights, as well as a transfer, Section 1327(b) should be read, consistent with the rest of Chapter 13, as fixing the debtor's right to possess and deal with the estate property after confirmation . . . The estate, however, remains intact after confirmation." *Id*. (citations omitted).

---

[3]Lundin and Brown include two additional approaches: The "estate replenishment" approach" and the "conditional vesting" approach. Under the estate replenishment approach, "[a]t confirmation, all property of the estate becomes property of the debtor; the Chapter 13 estate continues to exist and 'refills' with property defined in § 1306 that is acquired by the debtor after confirmation, without regard to whether that property is necessary to performance of the plan." Under the "conditional vesting" approach, "[a]t confirmation vesting gives the debtor an immediate and fixed right to use estate property, but that right is not final until the debtor completes the plan and obtains a discharge." Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, ¶ 230.1 (4th ed.)(11 U.S.C. § 1327(b): Vesting Effect on Property of Estate)

7

This Court finds the reasoning of *Kolenda* both persuasive and practical. The Court recognizes that a more recent case, *In re Van Stelle*, 354 B.R. 157 (Bankr. W.D. Mich. 2006), after a thoughtful and thorough analysis of *Kolenda* and the cases cited therein, disagrees with *Kolenda's* analysis. However, as explained below, applying *Van Stelle's* approach to the case at bar (and to most chapter 13 cases) seems, to this Court, contrary to the broad definition of property set forth in 11 U.S.C. § 1306 and inconsistent with the overall goals of a successful chapter 13 case.[4]

In *Van Stelle*, the substitution of collateral was proposed after the debtor's plan was confirmed. The debtors vehicle was totaled in an accident after commencement of their case but before confirmation of their plan. When they sought to apply the insurance proceeds from the old vehicle to purchasing a new vehicle post-confirmation, the court held that because the plan had been confirmed and it provided for estate property to re-vest in the debtors at confirmation pursuant to § 1327(b), the proceeds were no longer property of the estate and therefore could not be cash collateral under § 363(b). The *Van Stelle* court explained:

> In summary, Section 1327(b) and Section 1306(a) are reconcilable. As the district court in Fisher II [*Chicago v. Fisher (In re Fisher),* 203 B.R. 958 (N.D. Ill. 1997)] concluded, property that had become property of the estate in a Chapter 13 proceeding either by operation of Section 541 or Section 1306 prior to confirmation will again become the debtor's property upon confirmation by operation of Section 1327(b) unless the plan or confirmation order provides otherwise. However, the bankruptcy estate will continue regardless of whether it is depleted of property at confirmation so that it will be available to serve as a receptacle under Section 1306 for debtor's post-confirmation acquisition of property. Granted, this resolution is not particularly elegant. However, it suffices.

---

[4] 11 U.S.C. § 541(a)(6) defines proceeds of property of the estate as property of the estate. Insurance proceeds certainly seem to fall within this category.

*Van Stelle*, 354 B.R. at 172-73.

This Court finds the *Van Stelle* decision well reasoned, but the inplications of its conclusion are not addressed by the court. If confirmation transfers all rights, title, and interest in property from the bankrupcy estate to the debtor post-confirmation, the debtor has no protection from state court actions to repossess debtor's assets - - assets which may well be critical to the implementation of a debtor's plan. This Court's difficulty with *Van Stelle's* conclusion was anticipated by the *Kolenda* court:

> To conclude that § 1327(b) destroys the estate at the time of confirmation or empties it of its assets removes the availability of these assets should conversion be necessary. *Fisher I*, 198 B.R. at 728. It further hinders the implementation of the plan to the extent that the plan depends on the use of the assets, such as a car. *Id*. at 729. In addition, understanding § 1327(b) as eliminating the estate renders the trustee's role superfluous and would provide no protection from waste and preferential distribution of the debtor's property.

*In re Kolenda*, 212 B.R. at 854.

Applying the *Kolenda* approach to the case at bar, the Court finds that the insurance proceeds paid post-confirmation as a result of Debtor's car accident are property of the estate. The Court must, therefore, determine whether Debtor may use those proceeds, the Credit Union's cash collateral, to purchase a replacement vehicle and give the Credit Union a lien on the replacement vehicle.

B. <u>Debtor may not use the Credit Union's cash collateral unless Debtor satisfies the adequate protection requirements of 11 U.S.C. §§ 361(2) and 363(c).</u>

Pursuant to 11 U.S.C. § 363(e) a debtor who proposes to use a secured creditor's cash collateral must provide that creditor with adequate protection. 11 U.S.C. §361 defines adequate protection. Adequate protection may consist of providing a secured creditor with an additional or replacement lien "to the extent that such stay, use,

9

10-70559-mbm    Doc 47    Filed 12/14/11    Entered 12/14/11 15:15:54    Page 9 of 12

sale, lease, or grant results in a decrease in the value of such entity's interest in such property..." 11 U.S.C. § 361(2). The most typical use of the replacement lien as adequate protection is to provide a creditor, who holds a security interest in inventory, with a replacement lien as inventory is bought and sold by the debtor. Thus as the debtor uses up inventory, the secured creditor retains a replacement lien on new inventory of similar value to the inventory sold.

In the instant case, the Debtor is proposing a replacement lien in Debtor's new vehicle and alleges that such a lien satisfies 11 U.S.C. § 361(2). A replacement lien on these facts is not likely to constitute adequate protection because Debtor is using all of the secured creditor's cash collateral and giving the creditor a replacement lien of lower value than the creditor's original lien. Debtor purchased her 2006 Honda Accord on July 28, 2006 for $21,532.50. Approximately five years later when the vehicle was destroyed, the insurer valued the collateral at $8,492.00. Thus the value of the Credit Union's lien in the 2006 Honda Accord is $8,492.00. The Debtor now proposes to take that same $8,492.00 to purchase a new car and give the Credit Union a replacement lien in a car purchased for $8,492.00. Because of the manner in which vehicles depreciate in value, within days of owning the new car, the Credit Union's lien in the new collateral will probably have a value less than $8,492.00. If the creditor is required to enforce its new lien as a result of non-payment by the Debtor, the value of the new collateral is likely to be less than $8,492.00. In other words, Debtor's proposed replacement lien is unlikely to protect the secured creditor from a diminution in the value of its collateral.

The Court also finds that the Debtor's proposal to continue to make monthly

10

installment payments through the plan fails to provide adequate protection to the Credit Union.  When Debtor's case was confirmed, the Credit Union had a right to sixty monthly installment payments in the amount of $195.91 and a lien on collateral.  The Credit Union valued the collateral at $9,379.98.  (The insurer valued the collateral at $8,492).  If Debtor did not make the payment, the Credit Union could have lifted the stay, repossessed the car, and obtained (almost) the full value of its collateral.  Now, Debtor is proposing to make payments but the value of the collateral is probably significantly less than $8,492.  If Debtor makes all of her plan payments, 60 months from now, the Credit Union will be paid in full.  However, this Court cannot accept the argument that the Credit Union, who as a loss payee is entitled to full payment of its lien today, is adequately protected by the promise of monthly payments over five years and a replacement lien of less value than its prior lien.[5]

This Court's assumptions about the value of a replacement lien are generalizations, not evidence.  The issue of whether Debtor's proposed replacement lien adequately protects the Credit Union creates a fact question regarding the rate of depreciation on the vehicle Debtor chooses to purchase.  The Court will hold an evidentiary hearing on January 4, 2012 at 9:30 a.m. to determine whether Debtor's proposal to grant the Credit Union a replacement lien and plan payment constitutes

---

[5]The Court acknowledges that there is case law contrary to the Court's conclusion regarding adequate protection.  *See e.g. In re Guthrie*, 2009 WL 2208334 (Bankr. D. Kan); *Carey v. General Motors Acceptance Corp. (In re Carey)*, 202 B.R. 796 (Bankr. M.D. Ga, 1996).  However, in those cases, there is scant analysis of how a replacement lien in a vehicle of lower value than the original vehicle constitutes adequate protection.  The Court declines to follow those cases.

11

adequate protection pursuant to 11 U.S.C. § 363(e).

### III. **CONCLUSION**

For the reasons set forth above, Debtor's Motion for Entry of Final Order Authorizing Debtor to Use Cash Collateral is adjourned. An evidentiary hearing will be held on Wednesday, January 4, 2012 at 9:30 a.m.

Signed on December 14, 2011

                                       /s/ Marci B. McIvor
                                       Marci B. McIvor
                                       United States Bankruptcy Judge